Filed 12/20/13  P. v. Taylor CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM J. TAYLOR,<br><br>        Defendant and Appellant. | A136172<br><br>(Marin County<br>Super. Ct. No. SC175421A) |

Defendant William J. Taylor argues there was insufficient evidence for a jury to convict him of sexual penetration of a child.  He also argues the trial court erred when it orally pronounced sentence and stayed portions of his consecutive determinate terms. We affirm. Substantial evidence supports his conviction and the abstract of judgment correctly specifies authorized prison terms.  However, we remand to allow the superior court to correct an error on the abstract of judgment.

**Background**

On April 26, 2011, Taylor was arrested in Novato after probation enforcement officers from the Marin County Sheriff's office conducted a search and found crystal methamphetamine and drug paraphernalia in his bedroom.  Officers also found approximately 25 DVDs and mini-DVDs in a suitcase in Taylor's bedroom, including a mini-DVD labeled "T" (hereafter "T video").  The officers played the T video on a portable video player and recognized that it contained footage of child pornography. Taylor's mobile phone was seized from his pocket during the arrest and from it Novato

1

police extracted thousands of pictures of naked children.  On May 5, 2011, police searched a trailer in Petaluma that belonged to Taylor and seized DVDs and a personal computer that contained thousands of files of child pornography and duplicates of files found in his bedroom, such as the T video.

The T video depicted Taylor molesting an eight-year-old girl (Jane Doe)[1] on April 12, 2008.  In 2008, Taylor employed Doe's father.  When Doe's father experienced legal problems and separated from his wife, Taylor allowed him to stay at his house for periods of time from 2008 to 2009.  Doe and her younger sisters would often visit and stay overnight.  After Taylor was arrested, police interviewed Doe and learned that when she was younger Taylor had removed her clothing and touched her buttocks and genital area while video-recording her on multiple occasions.

In a two-minute segment of the T video time-stamped April 12, 2008, 8:03 p.m., Doe is lying on her stomach and facing forward.  The camera is behind her, focused on her genital area and buttocks.  During the first minute of the video, Taylor rather vigorously pokes and rubs Doe's genital area through her panties.  During the second minute of the video, Taylor peels off Doe's panties, zooms the lens onto her genitalia, and briefly pulls the genitalia aside to expose her vaginal entrance.

On April 26, 2012, prosecutors charged Taylor with one count of sexual penetration of a child ten years old or younger (Pen. Code, § 288.7, subd. (b))[2] (count one); one count of sexual penetration with a foreign object of a child under 14 years old by a person ten or more years older (§ 289, subd. (j)) (count two); four counts of lewd and acts on a child under 14 years old (§ 288, subd. (a)) (counts three, four, five, and

---

[1] Jane Doe was referred to in the information as "Jane Doe #1" to distinguish her from another victim in one of the charged counts, "Jane Doe #2."  Since no arguments are raised with respect to the offense against Jane Doe #2, we will refer to Jane Doe #1 simply as "Jane Doe" or "Doe."

[2] All further undesignated statutory references are to the Penal Code.

six)[3]; one count of using a minor for sex acts (§ 311.4, subd. (c)) (count seven); and one count of possessing child pornography (§ 311.11, subd. (a)) (count eight). Taylor was also charged with one count of possession for sale of methamphetamine (Health & Saf. Code, § 11378) (count nine) and one count of possession of a smoking device (Health & Saf. Code, § 11364, subd. (a)) (count ten).

A Novato police officer testified about images found on Taylor's mobile phone, in his bedroom, and in his trailer as an expert in child pornography investigations. He described the anatomical differences that police use to identify the subjects of photographs as being under 18 years of age. Footage from the T video was played for the jury and the officer identified Doe as the girl in the film. He also identified the hand and arm in the footage as Taylor's because of the distinctive tattoos on the forearm.

Twelve-year-old Doe testified against Taylor. The prosecutor also played footage of Doe's interview by a police sergeant for the jury and a transcript of the audio was also admitted into evidence. Doe's interview largely corroborated her testimony in court. In her testimony, Doe described how she would visit her father when he lived at Taylor's house when she was around eight years old. Taylor would buy her candy. He would video-record her while the two were alone in his bedroom, where he had left out photographs, magazines, and computer screen images of posing women. She described how "quite often" he would "physically and sexually touch" her in "private spots" such as her "vagina…butt and … boobs." She did not estimate the number of times, but stated that Taylor touched her vagina "often."

Doe described one occasion in 2008, when she visited her father at Taylor's house and Taylor invited her into his bedroom to watch television and then proceeded to give her a backrub. As she lay on the bed, Taylor rolled her pants and underwear down and used his hands to "sexually" rub her butt and vagina while he took pictures for about a

---

[3] Count four was the offense against Jane Doe #2.

half hour.  On another occasion in 2008, Doe described sleeping at Taylor's house in the basement with her sisters and father, and awakening in the "middle of the night."  She rose from bed to go to the bathroom and noticed Taylor awake "on the other side of the room."  Although she did not remember Taylor touching her then, she described how her vagina felt "weird" and "tingly like inside or on the skin."

Taylor testified in his own defense. He denied possessing methamphetamine, downloading pornography on his mobile phone or knowing anything about the mini-DVDs containing footage of the victims.  He could not explain how the child pornography ended up in his trailer in Petaluma.  He claimed he was set up for the crimes.  He acknowledged that E.'s daughters stayed in his home, but he did not recall video-recording them.  Although he recognized his tattooed arm in the videos, he did not have any explanation for the videos and insisted Doe was coached to accuse him.  He denied fondling, molesting, or penetrating Doe.  He criticized Doe's account of events and specifically that she had not accurately described the bedroom and some other details about his living situation.

On May 17, 2012, the court instructed the jury from a version of CALCRIM 1128 ("Engaging in Oral Copulation or Sexual Penetration With Child 10 Years of Age or Younger") for counts one and two.  The jury was instructed that "sexual penetration means penetration, however slight, of the genital or anal opening of the other person by any foreign object, substance, instrument, or device, or by any unknown object for the purpose of sexual arousal or gratification. [¶] Penetration of the genital opening includes penetration of the labia majora. The labia majora are part of the female genitalia. It does not require penetration of the vagina."

During closing arguments, the prosecution argued that CALCRIM 1128 did not require finding Taylor stuck "his finger all the way into the vagina," and that penetration occurred when his finger slightly penetrated the labia majora covering Doe's vagina.  The prosecutor then played the portion of the T video showing Doe laying bare-bottom on her

4

stomach while Taylor's hand rubs her genital area. The prosecutor proceeded to argue Taylor penetrated Doe when he pulled back skin in her genital area, exposed her genital opening, and touched her labia majora. Defense counsel rejected that interpretation of the video and argued penetration was not apparent. The defense further argued Taylor was merely manufacturing child pornography and therefore lacked the intent necessary to find him guilty of penetrating a child under the law because he was not touching Doe for sexual arousal or gratification.

The jury returned guilty verdicts for counts one through five and seven through ten. The court declared a mistrial on count six, an alleged lewd act committed on Doe, because of the failure to reach a verdict. The court imposed a sentence of 15 years to life in prison on count one (§ 288.7, subd. (b)). Sentences on counts two, three, and seven were stayed under section 654. The court imposed the upper term of eight years on count four (288, subd. (a)). For count five (§ 288, subd. (a)), the court imposed two years as one-third of the middle term because the count was subordinate to the principal term assessed in count four. For count eight (§ 311.11, subd. (a)), also a subordinate offense, the court imposed one-third of the midterm, or eight months that was to run consecutively. The court imposed one-third of the mid-term pursuant to section 1170.1, another eight months, to run consecutively on count nine. Thus, Taylor received an aggregate determinate term of 11 years and four months, in addition to the life term on count one.[4] The court did not impose a sentence for count ten (Health & Saf. Code, § 11364) because it was a misdemeanor.

Appellant filed a timely notice of appeal on August 1, 2012.

---

[4] The court granted Taylor a total credit of 517 days for time served, and ordered him to pay restitution (§ 1202.4) and register as a sex offender (§ 290).

**Discussion**

**a. Sufficient Evidence of Penetration**

Taylor argues there was insufficient evidence for the jury to conclude beyond a reasonable doubt that he violated section 288.7, subdivision (b), or section 289, subdivision (j), by penetrating Doe. He claims the footage of him molesting Doe on the T video does not show that his fingers penetrate her genital opening. Because there was no other evidence besides the video footage that could directly show penetration, he argues, the jury had no basis to conclude a penetration took place.

A defendant challenging a conviction based on insufficient evidence must "demonstrate that there is no evidence of a sufficiently substantial character to support the verdict upon any reasonable hypothesis." (*People v. Hatton* (1952) 114 Cal.App.2d 195, 196.) We review the entire record "to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence has "ponderable legal significance" (*id.,* at p. 576), that "a reasonable jury could find persuasive" (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8). If there is substantial evidence to support the verdict, "we must accord due deference to the trier of fact." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) As such, we will not "reweigh any of the evidence" and we will "draw all reasonable inferences, and resolve all conflicts, in favor of the judgment" (*People v. Poe* (1999) 74 Cal.App.4th 826, 830.) The verdict must be upheld "if, on the basis of the evidence presented, the jury's determination is reasonable" (*People v. Garrison* (1989) 47 Cal.3d 746, 774), and "may not be overturned when the circumstances might also reasonably support a contrary finding" (*People v. Lewis* (2001) 25 Cal.4th 610, 644).

Sexual penetration, "is the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the

defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).)  Penetration of the genital opening does not require penetration of the vagina.  (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1367.)  The labia majora is an external part of the female genitalia.  (*Ibid*.)  Thus, sexual penetration can occur when a finger penetrates the labia majora.  (*Ibid.*)  But, bare skin contact with the victim's genital opening is not required for penetration.  (*People v. Ribera* (2005) 133 Cal.App.4th 81, 85 [immaterial whether there was any clothing or barrier between the opening and the object at the time of the penetration].)  Moreover, proof of penetration can be based on circumstantial evidence.  (*People v. Peters* (1957) 149 Cal.App.2d 94, 97.)

Viewed in the light most favorable to the judgment, the evidence supports the jury's finding that Taylor penetrated Doe.  The T video shows Taylor poking and rubbing Doe's genitals through her panties with sufficient force to support an inference that his fingertips penetrated her labia majora in the process.  The requisite penetration could also be found from his pulling aside her genitals to reveal her vaginal entrance.  Based on the manner and movement of his touching, it is not unreasonable for a fact finder to infer that Taylor's fingers penetrated her genital opening at some point during this molestation.  After all, the element was satisfied when there is even a slight penetration of the exterior genitalia (*People v. Quintana*, *supra*, 89 Cal.App.4th at p. 1367), and penetration can occur through the fabric of her underwear (*People v. Ribera*, *supra*, 133 Cal.App.4th at p. 85).  Further, Doe testified at trial and stated during her interview with police that Taylor touched her vagina on multiple occasions.  Taken together and viewed with favor to the jury's conclusion, the evidence supports a reasonable inference that his fingers penetrated her genital opening.

7

**b. Sentencing**

Taylor argues the trial court erred when it orally pronounced his sentence and therefore his sentence should be reversed. He contends that rather than staying portions of upper term sentences for counts five, eight, and nine, the trial court should have imposed one-third of the middle terms for each offense.

When someone is convicted of more than one felony, a court imposing consecutive determinate prison terms must impose the full term for the principal term—that is, the term with the longest sentence—and one-third of the middle term of each of the subordinate terms. (§ 1170.1, subd. (a)[5]; *People v. Neely* (2009) 176 Cal.App.4th 787, 797-798.) One-third of the middle term is imposed for all subordinate terms "even if the trial court had initially selected the lower or upper term as the base term." (*People v. Neely, supra,* 176 Cal.App.4th at p. 798.) For subordinate terms, the sentencing court must indicate on the abstract of judgment whether each term is imposed as an upper, middle, or lower term. (*People v. Saibu* (2011) 191 Cal.App.4th 1005, 1013.)

Here, the oral pronouncement was flawed because it erroneously stayed portions of the terms for counts five, eight and nine. But, the abstract of judgment properly reflects the authorized prison terms for counts five, eight and nine as subordinate terms under section 1170.1. The court correctly imposed two years for count five, which is one-third of the six-year middle term for violating section 288, subdivision (a); eight

---

[5] Section 1170.1, subdivision (a), provides in pertinent part: "when any person is convicted of two or more felonies, . . . and a consecutive term of imprisonment is imposed . . . , the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes . . . . The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."

months for count eight, which is one-third of the 24-month middle term for violating section 311.11, subdivision (a); and eight months for count nine, which is one-third of the 24-month middle term for violating Health & Safety Code, section 11378. (CJER Felony Sentencing Handbook (CJER 2012) pp. 14, 18, 61.) Because the abstract of judgment will control the terms of Taylor's imprisonment, the court's flawed oral pronouncement has no legal effect and does not require reversal. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

The abstract does contain one error that requires correction. It does not correctly identify which term of the aggregate determinate sentence the trial court intended for counts five and eight. The court designated the prison terms for counts five and eight as "consecutive 1/3 [one-third]" terms, which is consistent with section 1170.1. But, those subordinate terms are also identified as 'U,' or upper terms in the abstract, which does not technically comport with section 1170.1's requirement that one-third of the middle term be imposed. Therefore, the entries for counts five and eight in the 'Term' column must be corrected to indicate the middle term for each. (*People v. Saibu, supra,* 191 Cal.App.4th at p. 1013.)

## Disposition

The convictions and the sentences are affirmed. The trial court is directed to prepare a corrected abstract of judgment showing that one-third of the midterm sentences were imposed on counts five and eight, and to forward a certified copy to the Department of Corrections and Rehabilitation.

_____

Siggins, J.

We concur:

_____

Pollak, Acting P.J.

_____

Jenkins, J.